**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff*, v. MARCUS HAGGAN, *Defendant*. | Crim. No. 20-612 **OPINION & ORDER** |

**John Michael Vazquez, U.S.D.J.**

This matter comes before the Court by way of Defendant Marcus Haggan's motion to modify his sentence and for immediate compassionate release. D.E. 67 ("Br."). The Government opposes the motion. D.E. 70 ("Opp."). The Court reviewed the parties' submissions and considered the motions without oral argument pursuant to Local Criminal Rule 1.1 and Local Civil Rule 78.1(b). Defendant seeks immediate release due to, among other things, the ongoing COVID-19 pandemic. For the following reasons, Defendant's motion for compassionate release is denied, as is his motion for appointment of counsel.

**I.   BACKGROUND**

**A.  Underlying Criminal Proceedings**

In January 2019, officers from the Jersey City Police Department investigated alleged heroin distribution from a residence on Grant Avenue, Jersey City. Presentence Report ("PSR") ¶ 17. The police saw Haggan appear to give drugs to Wyheim Hicks, while another suspect, Tyreek Martin, walked back to the house on Grant Avenue. *Id.* ¶¶ 19-20. When the officers then approached Haggan, he resisted and shoved one of the officers to the ground. *Id.* ¶ 22. Haggan

then ran, and discarded packaged heroin, before the police caught him. *Id*. Later tests of the substance found on Haggan, Hicks, and Martin (along with the substances found in the Grant Avenue residence) revealed heroin, fentanyl, and cocaine. *Id.* ¶ 29. The Court later sentenced Martin to 120 months' imprisonment and Hicks to 60 months.

On July 22, 2020, Haggan pled guilty to a two-count Information, charging him a conspiracy to distribute heroin and fentanyl in violation of 21 U.S.C. § 846, as well as possession of fentanyl with intent to distribute in violation of 21 U.S.C. § 846. D.E. 52, 54. Haggan had an extensive criminal history, including criminal sexual contact, witness intimidation, and seven prior felonies as to illicit drugs. PSR ¶¶ 62-74. As a result, Haggan was a career offender and faced a United States Sentencing Guidelines' range from 151 to 188 months. *Id.* ¶ 109. Nevertheless, the parties entered into a plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) in which they stipulated to a range of imprisonment between 60 and 72 months. D.E. 52. The Court accepted the plea and, on December 8, 2020, sentenced Haggan to 68 months' imprisonment followed by 3 years of supervised release. D.E. 63, 66.

Haggan is currently housed at FCI Schuylkill in Pennsylvania. He is scheduled to be released on March 17, 2024.

### B. COVID-19 Pandemic

COVID-19 "is caused by the virus severe acute respiratory syndrome coronavirus 2 (SARS-CoV-2), a new virus in humans causing respiratory illness which can be spread from person-to-person." *COVID-19*, "COVID-19 Overview and Infection Prevention and Control Priorities in non-US Healthcare Settings," Centers for Disease Control and Prevention (Feb. 26, 2021), https://www.cdc.gov/coronavirus/2019-ncov/hcp/non-us-settings/overview/index.html#background. "COVID-19 is primarily transmitted from person-to-person through respiratory

droplets. These droplets are released when someone with COVID-19 sneezes, coughs, or talks." *Id.* Persons who contract the virus reflect a wide range of symptoms from asymptomatic to mild (including fever, cough, nausea, chest pain, and body pain) to severe to critical (including respiratory failure and death). *Id.* As a result, standard precautions to prevent the spread of the virus include social distancing, proper hygiene, personal protective equipment (including use of a face mask), and maintenance of clean surfaces and devices. *Id.*

Numerous factors can increase a person's risk of severe illness if he/she contracts the virus. As a person get older, his/her risk for severe illness from COVID-19 increases. *COVID-19*, "Older Adults," Centers for Disease Control and Prevention (May 14, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html. For example, persons in their sixties and seventies are at a higher risk of severe illness than people in their fifties. *Id.* Those 85 or older are at greatest risk. *Id.* Adults 65 or older comprise 8 out of 10 COVID-19 deaths in the United States. *Id.* The following medical conditions put a person at increased risk of severe illness from COVID-19: cancer, chronic kidney diseases, chronic liver diseases, chronic lung diseases (including asthma if it is moderate to severe), cystic fibrosis, dementia or other neurological conditions, diabetes, certain disabilities, HIV infection, immunocompromised state, certain mental health conditions, obesity, pregnancy, physical inactivity, sickle cell disease, smoking, solid organ or blood stem cell transplant, stroke or cerebrovascular disease, substance use disorders, and tuberculosis. *COVID-19*, "People with Certain Medical Conditions," Centers for Disease Control and Prevention (last update Feb. 25,

2022),[1] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

As of October 31, 2022, the United States has had 97,329,787 COVID-19 cases, resulting in 1,066,351 deaths. *COVID Data Tracker*, Centers for Disease Control and Prevention, https://covid.cdc.gov/covid-data-tracker/#cases_casesper100klast7days (last visited Oct. 31, 2022).

### C. Federal Bureau of Prisons

The Federal Bureau of Prisons ("BOP") has taken the following steps to combat the virus. On March 13, 2020, the BOP modified its operations in accordance with its "COVID-19 Action Plan." *Federal Bureau of Prisons COVID-19 Action Plan*, Federal Bureau of Prisons (Mar. 13, 2020), https://www.bop.gov/resources/news/20200313_covid-19.jsp. Initially, all social visits, inmate movement, and official staff travel were suspended for thirty days. *Id.* Contractors who enter any BOP facility are screened for the virus and, initially, admission was limited to contractors who performed essential services. *Id.* Currently, the BOP has adopted a "COVID-19 Modified Operations Plan & Matrix[,]" in which institutions are divided into three operating levels "based on the facilities' COVID-19 medical isolation rate, combined percentage of staff and inmate completed vaccinations series, and their respective community transmission rate." *COVID-19 Modified Operations Plan & Matrix*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/pdfs/covid19_modified_operations_guide.jsp. (last visited Oct. 31, 2022). Depending on which operating level a facility falls under, the facility can follow normal

---

[1] The CDC previously provided two separate lists, one listing conditions that entailed a greater risk of severe illness and one setting forth conditions that might involve a greater risk.

operations or the "BOP's COVID-19 Pandemic Plan"—with other modifications depending on the level. *Id.*

The BOP also has a COVID-19 vaccination plan. *COVID-19 Vaccine Guidance*, Federal Bureau of Prisons Clinical Guidance https://www.bop.gov/coronavirus. (last visited Oct. 31, 2022). To date, BOP has administered 334,671 doses of the vaccine. The BOP COVID-19 current statistics are as follows: (1) 231 inmates and 315 staff presently have confirmed positive tests; (2) 48,309 inmates and 14,361 staff have recovered; and (3) 309 inmates (11 while on home confinement) and 7 staff have died. *Id.* FCI Schuylkill, where Defendant is housed, currently reports 3 inmate and 0 staff cases. *Id.* In addition, 512 inmates and 73 staff have recovered, and there have been no deaths. *Id.*

### D. The Parties' Arguments

Haggan argues that he should be released due to his medical conditions, the threat of COVID-19, inadequate medical care, living in harsh conditions, and his post-sentencing rehabilitation. Br. at 1. Haggan notes that he is obese and suffers from high blood pressure, as well as asthma. *Id.* at 2. Haggan continues that both of his parents have cancer and argues that his confinement is punishment to his four children, two of whom were born after his arrest. *Id.* at 3. Haggan also indicates that he has a grandchild and that his wife's six other children know him as dad. *Id.* at 4. Haggan reports that he has been a model prisoner, that he participates in the Unicor programs, and that he is enrolled in several other programs. *Id.*

In opposition, the Government indicates that Haggan as been vaccinated and also received a booster shot. Opp. at 7 (citing Haggan's BOP medical records), 12-14. The Government continues that Haggan has also tested negative on at least seven occasions. *Id.* at 7. While the Government does not contest Haggan's physical maladies, it notes that all are well-controlled. *Id.*

5

at 6, 15. The Government adds that Hagan has not shown that his wife is incapacitated or the only available caregiver to his children. *Id.* at 15-16. Finally, the Government argues that the Section 3553(a) factors weigh strongly against his release. *Id.* at 16-17.

On April 17, 2022, Haggan wrote to the Warden of FCI Schuylkill, seeking release based on his asthma. The Warden denied the request on May 2, 2022. While it appears that Haggan did not present the Warden with all of Haggan's current bases for relief, the Government does not appear to contest the exhaustion requirement.

## II. LEGAL STANDARD

Following the passage of the First Step Act, Section 3582(c)(1)(A) now reads as follows:

(c) Modification of an imposed term of imprisonment. The court may not modify a term of imprisonment once it has been imposed except that—

(1) in any case—

(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), *after considering the factors set forth in section 3553(a) to the extent that they are applicable*, if it finds that—

(i) *extraordinary and compelling reasons warrant such a reduction*; or

(ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and *a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g)*;

*and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission*; and

> (B) the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure; and
>
> (2) in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A) (emphases added).

The applicable policy statement of the United States Sentencing Commission is found in Section 1B1.13. U.S. Sentencing Guidelines Manual § 1B1.13 (U.S. Sentencing Comm'n 2018) ("U.S. Sentencing Guidelines Manual"). The application notes to the section provide four circumstances that can be considered extraordinary and compelling: (1) the medical condition of the defendant, (2) the age of the defendant, (3) family circumstances, and (4) other circumstances constituting an extraordinary or compelling reason, either considered alone or in combination with any of the other three stated reasons. *Id.* cmt. n. 1(A)-(D). In *United States v. Andrews*, 12 F.4th 255, 259-60 (3d Cir. 2021), the Third Circuit found that the policy statement was not binding on courts but nevertheless found that the statement could provide useful guidance.

Pursuant to Section 3582(c)(1)(A), the Court must also consider the relevant factors listed in 18 U.S.C. § 3553(a). They include the nature and circumstances of Defendant's offense, the history and characteristics of Defendant, the need for the sentence to provide just punishment, and the need to protect the public from future offenses by Defendant. *Id.*

### III.   ANALYSIS

The Court finds that Haggan has not met his burden as to extraordinary and compelling circumstance for the following reasons. First, Haggan has been vaccinated and received a booster

thereby reducing his risk of serious illness should he become infected. *United States v. Turbides-Pena*, No. 17-339, 2021 WL 2310093, at *3 (D.N.J. June 7, 2021). In fact, many courts have found that the threat of COVID-19 cannot justify release once the vaccine became available. *United States v. Reed*, No. 18-78, 2021 WL 2681498, at *4 (E.D. Pa. June 30, 2021). Second, while Haggan's obesity, asthma, and high blood pressure could potentially put him at greater risk of an adverse event should he become infected, his medical conditions are currently well-controlled. Third, Haggan's medical records from the BOP belie his claim that he has not been receiving regular and adequate medical care. Finally, FCI Schuylkill currently has only 3 positive cases facility wide.

As to Haggan's parents and children, the Court is always conscious that sentencing any person to imprisonment can adversely impact those completely innocent, such as the person's minor children. However, the Court agrees with the Government that Haggan's submission falls short of demonstrating that he is eligible for release. Outside of indicating that his parents have cancer, Haggan provides no additional information, such as to prognosis or Haggan's role if he were released. And Haggan also does not show that his children are not receiving adequate care.

The Court also agrees with the Government that the Section 3553(a) factors militate against release. Haggan was involved in a drug conspiracy involving heroin and fentanyl, two incredibly dangerous opioid-based drugs. Moreover, he physically accosted an officer and fled. Finally, Haggan's long criminal history (and very limited legitimate work history) weigh against Haggan's motion. While the Court accepted the Rule 11(c)(1)(C) plea, the Court also noted that it was one of the most difficult decisions that it had had to make in light of the circumstances of the case and Haggan's background.

## IV.    CONCLUSION

For the foregoing reasons, and for good cause shown,

It is on this 1st day of November 2022 hereby

**ORDERED** that Defendant's motion for compassionate release, D.E. 67, is **DENIED**; and it is further

**ORDERED** that the Clerk's Office shall mail a copy of this Opinion and Order to Defendant by regular mail.

_____
John Michael Vazquez, U.S.D.J.